UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| KRISTY LAWLESS, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3: 19-021-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| VANESSA KENNEDY,[1] Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Kristy Lawless has filed a petition for a writ of habeas corpus, seeking to expunge a prison disciplinary conviction and to restore 1,321 days of good time credits. [Record No. 1] The petitioner, an inmate at the Kentucky Correctional Institution for Women ("KCIW"), asserts grounds for habeas corpus relief under 28 U.S.C. § 2254. *Id.* at p. 1. The matter was referred to a United States Magistrate Judge to prepare a report and recommendation under 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Hanly A. Ingram recommended that the Court deny the petition without issuing a Certificate of Appealability ("COA"). [Record No. 8]

Lawless raises several objections to Magistrate Judge Ingram's Recommended Disposition. [Record No. 9] First, she contends that the Magistrate Judge failed to accurately analyze precedent relevant to Ground One of her petition (i.e., the claim that the Adjustment

---

[1] Lawless' petition styles the case: "Kristy Lawless, Petitioner v. Janet Conover, Warden, Kentucky Correctional Institution for Women, Respondent." [Record No. 1] Vanessa Kennedy is now Warden of the Kentucky Correctional Institute for Women and thus the proper respondent in her official capacity. The Court has revised the caption accordingly. *See* Fed. R. Civ. P. 17(d), 25(d); R. 2(a), 12 of the Rules Governing Section 2254 Cases in the United States District Courts.

Officer's affidavit mentioning camera footage did not accord with due process). She argues that applicable precedent reveals that the Supreme Court of Kentucky's decision regarding her habeas petition was contrary to, or an unreasonable application of, clearly established federal law. [Record No. 9, pp. 2-3] Next, Lawless asserts that the Magistrate Judge improperly determined that § 2254 AEDPA deference applies to the state court's decision regarding Ground Two of her petition (i.e., the claim that she was denied due process when she was prohibited from viewing the video evidence herself). *Id.* at pp. 4-5. Alternatively, she objects to the Magistrate Judge's conclusion that the denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law. *Id.* at pp. 5-6. Finally, Lawless objects to the Magistrate Judge's recommendation that the Court decline to issue a COA. *Id.* at pp. 6-7.

This Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which objections are made. 28 U.S.C. § 636(b)(1)(C). However, Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). After a careful examination of the record, including the petitioner's objections, the Court will adopt the Magistrate Judge's Recommended Disposition [Record No. 8] and deny the relief requested by Lawless.

**I.**

Lawless was involved in a prison fight with a fellow inmate on February 24, 2014. Corrections Officer Jessica Evans' suffered a knee injury while attempting to defuse the situation. [Record No. 1-6, p. 22] Following an investigation, Lawless was charged with "physical action resulting in death or injury of an employee." *Id.* Evans alleged that Lawless

kicked her during the fight, causing the injury. *Id.* Lawless waived a full Adjustment Committee hearing and submitted to a review by Adjustment Officer Kristine Goetzinger ("the AO"). *Id.* Lawless testified, and the testimony of third-party witnesses was read into the record. *Id.* at p. 23. The AO's disciplinary report form noted: "Inmate also request[ed] that cameras be viewed as a witness on her behalf." *Id.* The AO found Lawless guilty of the infraction and, *inter alia*, revoked 1,321 days of good time credits. *Id.* The "Findings" section of the prison official's disciplinary report form stated that the AO reached this conclusion, "due to [Evans' report] that [the] injury was caused from this inmate while trying to separate a physical altercation . . . ." *Id.* The "Findings" section did not mention the video footage, however. *See id.*

Lawless appealed the AO's determination to the warden. She disputed in the appeal the reasoning of the AO's "write-up," contending that she did not understand how the officer could weigh Evans' report over her own witnesses' testimony. *Id.* at p. 25. Lawson further argued that "[c]amera footage would be clear support of [her] defense, but [she] was refused the right to have it as evidence." *Id.* The KCIW warden denied the appeal on May 8, 2014. *Id.* at p. 24.

Lawless filed a timely Petition for a Declaration of Rights in the Shelby Circuit Court on November 4, 2014. *Id.* at pp. 11-20. The AO filed an affidavit during the circuit court's review of the prison disciplinary proceeding, stating in relevant part:

> 1. I, Kristine Goetzinger, am an Adjustment Officer at the Kentucky Correctional Institute for Women ("KCIW").
>
> 2. I was the adjustment officer for the prison disciplinary hearing held March 18, 2014 regarding Inmate Kristy Lawless #182878 on the charge of physical action resulting in death or injury of an employee.

> 3. In addition to requesting various witnesses, Inmate Lawless requested that the camera footage of the incident be viewed. Per the inmate's request I viewed the requested camera.
>
> 4. Based upon the evidence in the record I found "some evidence" that Inmate Lawless committed the infraction charged and found nothing in the camera footage that would alter this determination.
>
> 5. Since my determination of guilt was not based upon the camera footage but rather on the statement of the officer (the victim) regarding who injured her, I did not include any statement in my finding regarding the camera footage.

*Id.* at p. 49.

The Shelby Circuit Court dismissed the petition on November 26, 2014. *Id.* at p. 54. However, the Kentucky Court of Appeals reversed the decision of the Shelby Circuit Court. [Record No. 1-3] The warden then appealed to the Supreme Court of Kentucky. During this appeal, Lawless asserted arguments that have developed into "Ground One" and "Ground Two" of her § 2254 petition. More specifically, she claims: (1) the AO's affidavit did not comport with her due process rights because it was submitted during the later circuit court proceeding and did not describe what was in the video; and (2) she was denied due process when the AO denied her personal access to the camera footage. [Record Nos. 1, pp. 18-24, 5-5, pp. 6-11, and 7, p. 4] The Supreme Court of Kentucky reversed the decision of the court of appeals, denying the petition and explicitly holding that the affidavit comported with Lawless' due process rights. [Record No. 1-2, p.5] The Supreme Court of Kentucky's opinion did not specifically address Lawless' claim that she was denied due process when she was refused personal access to the video evidence. [Record No. 1-2] Lawless now reasserts these two arguments as grounds to expunge the prison disciplinary proceeding conviction and restore the 1,321 days of good time credits. [Record No. 1]

## II.

A writ of habeas corpus is the proper remedy for an inmate seeking relief from a prison disciplinary proceeding that resulted in the loss of good time credits because the inmate is challenging the fact or duration of her confinement. *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A state prisoner may accordingly seek habeas relief in federal court under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").

Assuming the inmate has complied with AEDPA's procedural requirements,[2] the federal habeas court must determine what standard of review applies to the merits of each of the petitioner's grounds for § 2254 relief. State court findings of fact are presumed to be correct, and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e). Regarding the standard of review for legal rulings, AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1).

---

[2] The petitioner does not object to the Magistrate Judge's determination that both arguments regarding the camera footage face no exhaustion or procedural default problems under AEDPA. [Record No. 9] Magistrate Judge Ingram conducted a thorough and accurate analysis of these issues [Record No. 8, p.p. 3, 9-13], and the Court adopts the conclusion that neither argument fails due to exhaustion or procedural default.

Section 2254(d)(1) "goes no further" than to "preserve[] authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court of the United States'] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The petitioner bears the burden of proof under this "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation and internal quotation marks omitted). Only "holdings, as opposed to the dicta, of [Supreme Court of the United States] decisions as of the time of the relevant state-court decision" constitute "clearly established Federal law" under AEDPA. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Accordingly, an inmate cannot meet her burden by merely showing that a state court's decision conflicts with federal circuit court precedent. 28 U.S.C. § 2254(d)(1); *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam).

However, it is not uncommon for state appellate courts to issue opinions that do not address every contention on appeal. *See Johnson v. Williams*, 568 U.S. 289, 298-301 (2013) (outlining common scenarios that explain why, "it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference."). In *Harrington v. Richter*, the Supreme Court held that there is a rebuttable presumption that state court summary opinions denying appeals are on the merits for the purposes of AEDPA although they do not directly address any of the federal claims presented on appeal. *Harrington*, 562 U.S. at 99-100. *Johnson v. Williams* extended this presumption to opinions that discuss some appellate arguments without addressing every federal claim, holding that, "when a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . ." *Johnson*, 568 U.S. at 298; *Olson v. Little*, 604 F. App'x 387, 390 (6th Cir. 2015). This

"on the merits" presumption is also rebuttable, particularly when a habeas petitioner can show that a claim was overlooked and "rejected as a result of sheer inadvertence." *Johnson*, 568 U.S. at 303. When a petitioner rebuts the presumption, the federal habeas court reviews the claim *de novo*, *see id.* at 293, 302-03, but an unrebutted presumption results in the court giving AEDPA deference to the state court opinion as it would under § 2254(d)(1). *Id.* at 293.

### III.

The Supreme Court of Kentucky's opinion directly addresses Lawless' first ground for habeas relief [Record No. 1-2] (i.e., the argument that the AO's later affidavit failed to comport with her due process rights). Lawless does not object to the Magistrate Judge's decision to conduct a straightforward AEDPA deference analysis. The petitioner does, however, object to the Magistrate Judge's determination that the state court's decision regarding Ground 1 was neither contrary to, nor an unreasonable application of, clearly established federal law. [Record No. 9, pp. 2-3] Nevertheless, the record demonstrates that the AO viewed the video evidence, documented the fact that she considered it, and based the revocation of good time credits on different evidence. The state court appropriately determined that this course of action was acceptable under Supreme Court precedent.[3]

---

[3] Lawless' objections to Magistrate Judge Ingram's conclusions regarding Ground One are confused. She appears to claim that the Magistrate Judge and state court did not adequately account for precedent that requires AO affidavits under similar circumstances to state how denying an inmate access to a witness is "related to maintaining institutional safety or correctional goals." [Record No. 9, pp. 2-3] The petition's first ground for relief, however, asserts that the AO needed to make findings related to the video evidence at the time of the disciplinary decision or, at the very least, provide more details about what the camera footage showed in the subsequent affidavit. [Record Nos. 1, pp. 18, 21 and 7, p. 4] Her second ground for relief concerns whether due process required personal access to the video. [Record No. 1, p. 21] This is an important distinction, as Ground Two requires a separate and distinct analysis. *See infra* Part IV.

The United States Supreme Court has issued several opinions relevant to the due process concerns over the prison disciplinary proceeding at issue. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the court held that "minimum requirements of procedural due process appropriate for the circumstances must be observed" in prison disciplinary proceedings that result in the loss of good time credits because they implicate a liberty interest. *Id.* at 555-58. Still, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. Instead, inmates are entitled to: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Walpole v. Hill*, 472 U.S. 445, 454 (1985) (condensing *Wolff's* holding).

The Court expanded *Wolff's* holding in two 1985 opinions: *Ponte v. Real*, 471 U.S. 491 (1985), and *Walpole v. Hill, supra*. *Ponte* declined to "'prescribe' as constitutional doctrine that the disciplinary board must state in writing at the time of the hearing its reasons for refusing to call a witness." *Ponte*, 471 U.S. at 496. Instead, it held that the prison officials could either state reasons for refusal at the time of the disciplinary proceeding or later "by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing." *Id.* at 497. The Court noted that, "so long as the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff*." *Id.*

*Hill* refined *Wolff's* broader implications for the consideration of evidence in disciplinary proceedings, holding that "the requirements of due process are satisfied if *some*

*evidence* supports the decision by the prison disciplinary board to revoke good time credits." *Id.* at 455 (emphasis added). Moreover, the Supreme Court clarified that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (emphasis added) (internal citations omitted).

To the extent Lawless objects that the delayed documentation of the camera evidence violated her due process rights because the AO could have conceivably made the determination before looking at the video evidence [*see* Record No. 9, p. 3], the Court finds that she cannot demonstrate how this is inconsistent with any relevant Supreme Court holding. To the contrary, *Wolff* requires that inmates have the opportunity to present documentary evidence when doing so "will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Similarly, *Ponte's* holding indicates that prison officials can provide reasons for *refusing* to allow an inmate to call a witness or present documentary evidence after the time of the disciplinary decision. *See Ponte*, 471 U.S. at 497; *see also Wolff*, 418 U.S. at 566 (equating the right to call witnesses to the right to present documentary evidence in the due process context of prison disciplinary proceedings).

Here, the AO's handling of the video footage was consistent with *Wolff* and *Ponte*. The record demonstrates that she considered the evidence according to the petitioner's request. It is unclear whether *Wolff* and *Ponte* required the AO to explain her consideration of the evidence because she did not refuse to look at the camera footage, but she nonetheless documented it in her affidavit at the onset of this litigation. This later explanation regarding

the evidence is consistent with *Ponte*, which held that an inmate's due process rights are not violated when an AO later explains why she prevented the inmate from offering evidence.

An AO's acceptance of evidence without conducting an actual review may be considered the equivalent of prohibiting the inmate from presenting evidence at all. Such inaction could perhaps necessitate a *Ponte* explanation. However, Lawless cannot point to evidence that the AO did not review the camera footage prior to issuing her initial report. Further, the state court opinion (as well as the Recommended Disposition) explicitly and correctly noted that the record requires upholding the AO determination under *Hill's* minimal "some evidence" standard. [Record Nos. 1-2, p. 5 and 8, pp. 7-8]

The Supreme Court of Kentucky found that "the AO was very clear that she based her disciplinary decision on the statement of the officer (victim). That certainly satisfies the 'some evidence' standard adopted by the United States Supreme Court." *Id.* (citing *Hill*, 472 U.S. at 454). Indeed, the AO's initial disciplinary report form indicates that she relied on the testimony of Officer Evans. The AO's circuit court affidavit similarly states that while she reviewed the camera evidence and found no evidence contradicting the officer's testimony, her determination was based on the witness testimony. This Court will not, and the state court appropriately did not, question the determination of the AO because she based her decision on "some evidence," cited the evidence in her initial report, and has continued to cite such evidence throughout the litigation.

In summary: (1) the AO's documentation of her reasoning was constitutionally-sufficient regardless of how much detail she gave about the contents of the video; and (2) the state court opinion's regarding Ground One was not contrary to, or an unreasonable application of, clearly established federal law.

## IV.

### A.

Lawless also challenges Magistrate Judge Ingram's recommendation that the Court defer to the state court's denial of her petition regarding her second ground for relief (i.e., the claim that her due process rights were violated when she was denied an opportunity to view the evidence herself). [Record No. 9] Lawless agrees that the state court did not directly rule on this argument. *Id.* at p. 4. She contends, however, that *Harrington*, and thus § 2254 deference, are inapplicable, necessitating a de novo review of Ground Two. *Id.* at pp. 4-5.

The record indicates that *Harrington* applies in this case. The Supreme Court of Kentucky denied the petition, addressing the petitioner's first ground for relief without explicitly ruling on the second ground. As noted previously, *Johnson* extends *Harrington* to this scenario, creating a rebuttable presumption that the state court adjudicated the undiscussed claim on the merits. *Johnson*, 568 U.S. at 298, 303. If the petitioner does not rebut this presumption, AEDPA deference applies.[4] *Id.* at 293.

But Lawless has not rebutted the presumption in this case. In fact, her petition does not substantively address *Harrington* or *Johnson*, concluding only that § 2254 deference does not apply because the state court did not rule on the merits of Ground Two. [Record No. 1, pp. 25-26]

---

[4] Lawless argues that the Court should not defer to the state court opinion because the presumption does not apply in this case. [Record No. 9, pp. 4-5] This misstates the law and distracts from the petitioner's burden. The "on the merits" presumption always applies when the state court opinion expressly denies a claim on appeal without addressing another federal claim. The relevant question is whether the petitioner can effectively rebut the presumption to avoid AEDPA deference and receive *de novo* review.

The only argument that conceivably resembles a rebuttal comes in Lawless' objections to the Magistrate Judge's reasoning that the state court likely intended a denial of Ground Two on the merits. [Record No. 9, pp. 4-5] Magistrate Judge Ingram analyzed the state court holding language: "[Lawless] was not denied a meaningful opportunity to consider . . . the surveillance video. In fact, the AO submitted an affidavit specifically addressing that video." [Record No. 8, p. 15 (quoting Record No. 5-10, p. 6)] The Magistrate Judge determined that the state court, "need not have expressly described whether it was necessary that the video was viewed by Lawless herself, or whether review by the AO was sufficient. The Court's ruling – that there was 'no error' – covers both scenarios." [Record No. 8, p. 15] The Recommended Disposition then concluded that, when coupled with the fact that Ground Two arguments were briefed by both parties before the Supreme Court of Kentucky, it was evident that the state court had implicitly ruled on the second ground for relief. *Id.*

Lawless objects to this reasoning, asserting that it "results in an unquestionable denial of procedural due process" because the United States Constitution requires that she be able to personally view the video herself. [Record No. 9, pp. 4-5] She further contends that the fact that parties have briefed an argument on appeal cannot indicate an implicit denial on the merits because the "presumption would always apply, and there would be no reason for separate standards of review." *Id.* at p. 5. But these arguments fail to rebut the presumption.

Lawless contends in her first objection that deference would violate due process without addressing why the state court opinion should not be viewed as a denial on the merits. She appears to assert in her second objection that viewing the parties' full briefings of a claim on appeal as evidence of an implicit denial on the merits would result in AEDPA deference in all similar cases. Of course, this is true only to the extent that petitioners like Lawless do not
...

point to anything in the record to rebut what the Supreme Court has explicitly held to be a "rebuttable" presumption. *Johnson*, 568 U.S. at 301-03. Here, Lawless has failed to meet her burden and demonstrate why the Court should not view the state court decision as an "on the merits" denial of Ground Two.

The Court adopts Magistrate Judge Ingram's analysis because it cogently explains why the record indicates the state court's failure to explicitly address Ground Two was unlikely the "result of sheer inadvertence." *See Johnson*, 568 U.S. at 303. But regardless of this independent reasoning, the content of the state court opinion clearly triggers the presumption that the opinion denied Ground Two on the merits. The petitioner has not rebutted the presumption, and the Court will accordingly apply a § 2254 deference analysis to assess the state court's implicit denial of Ground Two.

**B.**

Lawless contends that, even if a § 2254 deference analysis is appropriate, the denial of Ground Two was either contrary to, or an unreasonable application of, clearly established federal law. [Record No. 9, pp. 5-6] To the extent that her Ground Two arguments echo her Ground One objections that the AO insufficiently documented viewing the video in the later affidavit, the Court again finds that the state court opinion was neither contrary to, nor an unreasonable application of, clearly established federal law. *See supra* Part III (explaining that the AO's review of the video, alternative basis for a guilty determination, and subsequent documentation of the video evidence are not inconsistent with *Wolff*, *Ponte*, and *Hill*). However, Lawless also contends that *Ponte* required the AO to explicitly state reasons why denying Lawless *personal access* to the video was "logically related to preventing undue hazards to institutional safety or correctional goals." [Record No. 9, pp. 2, 5-6]

*Wolff* and *Ponte's* holdings are concerned with the opportunity to *present* evidence to prison officials (a "limited right"), "when permitting [inmates] to do so will not be unduly hazardous to institutional safety or correctional goals." *Ponte*, 471 U.S. at 498-99 (quoting *Wolff*, 418 U.S. at 566) (internal quotation marks omitted). It is arguable that an inmate cannot "present" documentary evidence in the sense that *Wolff* and *Ponte* require without personally having access to that evidence. After all, it is hard to believe that prison officials' in camera review of documentary evidence would ever threaten institutional safety while there are manifold reasons why inmate access to such evidence could do so. *See*, *e.g.*, *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) (noting that allowing prisoners to view security footage could give an inmate unwarranted knowledge of surveillance system capabilities). The *Wolff* opinion itself hints at this point, albeit it in dicta. *Wolff*, 418 U.S. at 566 ("Prison officials must have the necessary discretion to . . . limit access to other inmates to collect statements or to compile other documentary evidence."). Therefore, cases in which inmates are permitted to submit documentary evidence to prison officials but denied the right to view the evidence themselves might constitute denials of the opportunity to present evidence. If so, such denials could require an explanation, at some point, under *Ponte*.

Still, in the context of the present § 2254 analysis, this inference is not "clearly established" by the actual holdings of these Supreme Court cases. But even assuming the precedent requires an AO to state reasons for denying an inmate personal access to evidence, it only requires this explanation when the AO *actually refuses* a request to view the evidence.

Here, the record does not indicate that the petitioner requested that she receive access to the video. The AO's disciplinary report form (the file that documented the initial disciplinary proceeding) notes: "Inmate also request[ed] that cameras be viewed as a witness

on her behalf." [Record No. 1-6, p. 23] The facts section of the petitioner's Supreme Court of Kentucky appellate brief, the first brief to fully argue the personal access ground for relief, states: "Lawless also requested that the cameras be viewed as a witness on her behalf." [Record No. 5-5, p. 2] The "Material Facts" portion of her § 2254 petition similarly asserts that she, "requested that the [AO] view the camera footage of the incident as a witness on her behalf." [Record No. 1, p. 4]

None of these documents report or cite facts that show that prison officials denied Lawless' request to view the video herself. Instead, they either indicate that she requested that the AO view the evidence or that the footage "be viewed . . . on her behalf" (presumably by the AO).[5] When the respondent pointed this out [Record No. 5, p. 3], Lawless cited to her initial administrative appeal to the warden [Record No. 1-6, p. 25], which included the sentence: "Camera footage would be clear support of my defense, but I was denied the right to have it as evidence." [Record No. 7, p. 2]

This statement hardly indicates that Lawless requested to view the evidence herself. The remark does not refer to a request for personal access to the camera footage. Further, Lawless wrote the sentence in her administrative appeal of the AO disciplinary report. This is the same report that noted she had requested that the evidence "be viewed as a witness on her behalf" without mentioning in its "Findings" section that the AO viewed the evidence. [Record No. 1-6, p. 23] To this day, Lawless maintains that the report's failure to mention that the AO

---

[5] This is not to say that Lawless has failed to exhaust Ground Two. As Magistrate Judge Ingram determined [Record No. 8, pp. 9-11], the claim was exhausted for the purposes of § 2254 because it was clearly argued on appeal before the highest state court. *Wilson v. Mitchell*, 498 F.3d 491, 498-99 (6th Cir. 2007); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004). However, the fact that a petitioner presents and exhausts a legal argument in state court does not compel a federal habeas court to conclude that the claim has a firm basis in the record.

viewed the camera footage *at all* suggests that the official did not watch it prior to reaching her decision. [Record No. 9] The other parts of the administrative appeal also focused on the "Findings" section of the report, as Lawless primarily disputed what the AO found to be credible grounds for the guilty determination. This context illustrates that Lawless believed she was "denied the right to have [the camera footage] as evidence" because the report failed to mention that the AO viewed the video even though the same piece of paper documented that she requested that the official view it "on her behalf." It does not intuitively lead to the conclusion that she requested to view the evidence herself but was denied the opportunity to do so.

*Wolff* and *Ponte* require that an inmate receive the opportunity to present documentary evidence or an explanation, at some point, of why prison officials denied such an opportunity. Here, the record merely shows that Lawless requested that prison officials view the video evidence, the AO honored that request, and the official found nothing that altered the conclusion she had reached from other testimony. The record does not indicate that the petitioner requested to view the camera evidence herself, and it similarly fails to show that the AO took any steps to deny the petitioner the opportunity to present such documentary evidence to prison officials. Further, even if the camera evidence was potentially exculpatory, the petitioner has not pointed to any Supreme Court precedent requiring that it be released to her without a request for disclosure. *See Piggie*, 344 F.3d at 679 (7th Cir. 2003) (observing that the Supreme Court has not extended the *Brady* rule regarding disclosure of exculpatory evidence to prison disciplinary proceedings). Accordingly, the state court's denial of the petition regarding Ground Two was not contrary to, or an unreasonable application of, *Wolff* and *Ponte's* holdings.

**V.**

Lawless also objects to the recommendation that the Court decline to issue a COA. [Record No. 9, pp. 6-7] Under AEDPA, a court may issue a COA for a § 2254 petition, "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the Court reaches the merits of Lawless' claims, she must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Lawless' objections insist reasonable jurists could reject the conclusions that: (1) the state court did not issue an opinion contrary to, or involving an unreasonable application of, clearly established federal law regarding the AO affidavit; (2) *Harrington* and § 2254 deference extend to Ground Two; and (3) she was denied due process when she was not personally given access to the video. However, the Court's reasoning in Parts III, IV.A, and IV.B demonstrates why a COA should not issue.

First, the state court expressly denied Ground One. This denial was not contrary to, or an unreasonable application of, clearly established federal law because Supreme Court precedents do not require prison officials to contemporaneously document all evidence they review in making their decisions during disciplinary proceedings. It is unclear whether the AO in this case was required to later document the fact that she examined, rather than refused, the camera footage, but her subsequent affidavit was certainly consistent with *Ponte* and *Wolff*. Further, as long as AOs base their decisions on "some evidence," as the AO did in this case, revocation of good time credits comports with due process under *Hill*.

The state court did not explicitly deny Ground Two, the claim that Lawless was entitled to view the evidence herself. Nevertheless, *Johnson* clearly extends *Harrington's* presumption

of a denial on the merits to cases like Lawless'. As Magistrate Judge Ingram determined, it is much more likely that the Supreme Court of Kentucky implicitly denied, rather than overlooked, Ground Two. Regardless, Lawless offers no reasons to rebut the presumption, and the deferential § 2254 standard, rather than de novo review, is accordingly appropriate for Ground Two.

Lawless' best argument for a COA is that reasonable jurists could debate whether *Wolff* and *Ponte* require that prison officials either allow inmates access to video surveillance evidence or state reasons why denying such access is related to institutional safety. Still, reasonable jurists would not disagree with the conclusion that *Wolff* and *Ponte* only require prison officials to give reasons for *refusing* inmates the opportunity to present evidence. These precedents do not require a prison to hand over documentary evidence or explain itself when, as the record shows to be the case here, an inmate merely asks that an AO review it on the prisoner's behalf.

The petitioner has failed to show how reasonable jurists could find the Court's determinations debatable or wrong. Therefore, the Court will adopt Magistrate Judge Ingram's recommendation and declines to issue a COA.

## VI.

The Court adopts Magistrate Judge Ingram's Recommended Disposition [Record No. 8] in full. Seeing as "review under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," *Cullen*, 563 U.S. at 181, no evidentiary hearing is warranted.

Based on the forgoing analysis, it is hereby

**ORDERED** as follows:

1. The Magistrate Judge's Recommended Disposition [Record No. 8] is **ADOPTED** in full and **INCORPORATED** here by reference.

2. Petitioner Kristy Lawless' 28 U.S.C. § 2254 petition [Record No. 1] is **DENIED**.

3. The Clerk of the Court is directed to forward a copy of this Memorandum Opinion and Order to the petitioner.

4. The Court declines to hold an evidentiary hearing.

5. A Certificate of Appealability shall not issue.

Dated: September 19, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky